GEORGE W. JORDAN, PLAINTIFF IN ERROR, V. THE HAM-
ILTON COUNTY BANK, DEFENDANT IN ERROR.

1. **Chattel Mortgage.** If a chattel mortgage be duly filed in the office of the county clerk, as required by sec. 73, ch. 43, of the Revised Statutes of 1866 (Gen. Stat., sec. 14, ch. 25), as amended by the act of Feb. 15th, 1877, the mere failure of the clerk to properly index the same, as required by the next section, will not render it void as to a subsequent mortgagee without actual notice of its existence.

2. ———: DESCRIPTION OF PROPERTY. Description of property examined and held to be sufficiently definite.

3. ———: SENIOR AND JUNIOR MORTGAGEES: FRAUDULENT RE-LEASE BY THE FORMER. Where a senior mortgagee of chattels, for the purpose of depriving of his security a junior mortgagee of a part of the same property, fraudulently releases that portion on which his mortgage is the exclusive lien, the same being adequate security, he will not be permitted, to the prejudice of the latter, to go upon the property covered by the second mortgage for payment of his demand.

ERROR to the district court for Hamilton county. Tried below before POST, J. Action of replevin by Hamilton County Bank against George W. Jordan to recover property on which it claimed title by virtue of a chattel mortgage from Rule and others. Defense: title by prior mortgage on same property. Judgment below for plaintiff, to reverse which Jordan, the defendant, brought the cause here.

*Agee & Hellings*, for plaintiff in error. Jordan having prior lien, the only right of the Bank was to redeem. *Miller v. Finn*, 1 Neb., 301. *Renard v. Brown*, 7 Id., 454. Bank should have notified senior incumbrancer not to release, should have tendered the amount due, taken an assignment of the mortgage, and been subrogated to rights of senior incumbrancer. Herman on Chattel Mortgages, 147. The most favorable decision for defendant in error upon this subject is to the effect

that if a mortgagee, with notice of the equities of a junior incumbrancer, releases a portion of the property, to the prejudice of the junior incumbrancer, his claim in equity will be reduced in the same proportion that the property released bore to the entire security in point of value. *McIlvain v. Insurance Co.*, vol 9 "The Reporter," 760. *Cheesborough v. Milford*, 7 American Dec., 497, and cases there cited.

*E. J. Hainer* and *A. J. Rittenhouse*, for defendant in error. Indexing is essential to validity of mortgage. Herman on Chattel Mortgages, 367, 369, 374. *Metz v. State Bank*, 7 Neb., 165. *Hagenbuck v. Reed*, 3 Neb., 17. Dwarris on Stat., 110, 114. *Barney v. McCarty*, 15 Iowa, 510. The description is too vague to hold the property in question. *Golden v. Cockrill*, 1 Kans., 259. *Savings Bank v. Surgent*, 20 Kans., 576. *McCord v. Cooper*, 30 Ind., 9. *Montgomery v. Wright*, 8 Mich., 146. Herman on Chattel Mortgages, pp. 82, 83. Jordan having diminished the security of defendant in error without its consent, by releasing a portion of the same to which it had recourse, the property so held by defendant in error is discharged from the lien of Jordan. *Coyle v. Davis*, 20 Wis., 564. Herman on Chattel Mortgages, 365. A prior mortgagee, who knows that a part of the mortgaged property has been subsequently conveyed or encumbered by the mortgagor, will not be permitted to deal with him arbitrarily to the prejudice of the interests of such subsequent mortgagees or purchasers by releasing that part of the property on which he has the only lien, and attempting to enforce his claim out of those portions in which such others had become interested. *Deuster v. McComus*, 14 Wis., 307. *Stevens v. Cooper*, 1 Johns. Ch., 425. *Guion v. Knapp*, 6 Paige, 35. *Patty v. Pease et al.*, 8 Paige, 277. *Parkham v. Welch*, 19 Pick., 231.

LAKE, J.

Three questions are brought to our notice and discussed by counsel for plaintiff in error in their brief, and on which they contend the court below erred in its ruling. The *first* of these questions is whether the mere failure of the county clerk to properly index the chattel mortgage under which the plaintiff in error claimed the property, rendered it ineffectual as to a subsequent mortgagee, which the defendant in error was, in good faith, and without actual notice of its existence. We answer this question in the negative, for the following reasons:

Sec. 73 of ch. 43 of the Rev. Statutes, 1866, as amended by the act of Feb. 15th, 1877, provides that: "Every mortgage, or conveyance intended to operate as a mortgage of goods and chattels, hereafter made, which shall not be accompanied by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed in the office of the county clerk of the county where the mortgagor executing the same resides   *   *   *   *   *   and such clerk shall endorse on such instrument or copy the time of receiving the same, and shall keep the same in his office for the inspection of all persons, and such mortgage or instrument so filed shall be as valid as if the same were fully spread at large upon the records of the county." Laws 1877, 51. The plain import of this language is, that if the instrument be filed by the county clerk of the proper county, and kept in his office for inspection by interested parties, nothing more is wanting to hold the property as against subsequent purchasers or mortgagees.

Having thus declared what is necessary to be done, to make the instrument valid as against "subsequent purchasers and mortgagees in good faith," the next section, as amended at the same time, provides that: "Such clerk shall also enter in a book to be provided by him for that purpose, the names of all parties to such instruments, arranging the names of mortgagors alphabetically, and shall note thereon the time of filing such instrument or copy." As we understand it, the only purpose of the legislature in making the requirement of this section was to furnish a convenient mode of ascertaining whether any particular person has incumbered his chattels, without the necessity of examining all of the instruments that may happen to be on file in the office at the time. We are of opinion that by no proper construction of this statute can the duty enjoined upon the clerk by this section have any relation to the validity of the mortgage, which, by the preceding section, is made to depend solely upon its being properly filed. Until its validity is fixed, by being filed, the clerk cannot do what is required of him by the latter section. The duty of arranging the names of the mortgagors, as here directed, is an important one. It is, however, a duty which the clerk owes to the public, rather than to the mortgagees of instruments deposited in his office, and if any one of the public suffer through its non-performance, he must look to the clerk alone for redress.

The case of *Metz v. The State Bank*, 7 Neb., 165, cited by counsel for the defendant in error in support of their view that the indexing was essential to the validity of the mortgage, is not applicable. That was a case where a judgment creditor sought to make his judgment, rendered by a probate court, a lien upon the debtor's real estate within the county, and while it is true that we there held that indexing the names of the parties to

the judgment was an essential requisite to the perfection of the lien, the decision was upon a statute very different from the one we are now considering. In addition to requiring the filing of the transcript of judgment from the probate court, "in the office of the clerk of the district court," that statute declared expressly that, "when such transcript is so filed *and entered upon the judgment record*, such judgment shall be a lien upon real estate in the county where the same is filed; and when the same is so filed *and entered upon such judgment book*, the clerk of such court may issue execution thereupon in like manner as execution is issued upon judgments rendered in the district court." And that statute further provided that the "judgment record" should "contain the judgment debtor and the judgment creditor arranged alphabetically," etc. Under such provisions of statute, we necessarily held that indexing the parties to the judgment was requisite to the perfection of the lien.

The *second* question is, whether the property mentioned in the mortgage was described with requisite certainty. The description was as follows, viz.: "Two mules, one bay and one brown, aged eight years old. One mare, bay, eight years old. One bay horse, age five years old. One black mare, age five years old. One lumber wagon. One double harness. Nine acres of growing wheat, situated on south-west quarter of sec. 35, town 12, range 6." It is contended by counsel for the defendant in error that this description is void for uncertainty. We think otherwise. The color and ages of all the animals are definitely given. The wagon is described as a "lumber" one, a term generally applied to an ordinary double wagon used by farmers. The harness as a "double," one, that is, designed for a team of two animals. The nine acres of wheat was then growing. According to the mortgage, this prop-

erty was all then upon a certain tract of land described by government subdivision, in Hamilton county, Nebraska, and we think that a person of average intelligence would have had ño serious difficulty in finding and pointing it out, if there. Besides, if necessary, in order to distinguish any portion of it from other property of like description on the land, parol evidence was admissible for that purpose. *Bell v. Prewitt*, 62 Ill., 361.

The *third* question is, whether the release of a portion of property covered by his mortgage, by the plaintiff in error, worked a postponement of his lien to that of the defendant in error. The plaintiff's mortgage was executed on the twenty-first of April, 1879, to secure the payment of three promissory notes of that date, one for one hundred and fifty dollars, payable Nov. 1st, 1879, one for one hundred dollars, payable at the same time, and one for fifty dollars, payable Nov. 1st, 1880, with interest. The mortgage held by the Bank was given on the twenty-second of October, 1875, to secure the payment of a promissory note bearing date of the eighth of that month, and calling for the payment of one hundred and twenty-five dollars in one year, with interest. This mortgage was upon a span of mules, harness, and wagon, a part of the property covered by the first mortgage.

Occupying this relation to the property, and to each other, it was the right of the holder of the junior mortgage to redeem and have an assignment of the senior incumbrance. *Renard v. Brown*, 7 Neb., 449. Or, but for the release of said property not covered by the second mortgage, the first mortgagees might have been compelled first to look to that for payment. 1 Story's Eq. Jurisprudence, sec. 633. *High v. Brown*, 46 Ia., 259. The testimony very clearly shows that this course would have resulted in the satisfaction of both debts, and without the least prejudice to the senior mortgagees.

It is undisputed—in fact it is conceded—that the defendant in error had no knowledge of the existence of the first mortgage until after foreclosure proceedings were commenced upon it, at which time the release had already been given. Jordan himself testified that he gave the release on the 20th of December, 1879, the very day he commenced to foreclose as to the property covered by the second mortgage; and the cashier of the bank, Wildish, testified that the first he heard of the mortgage to Jordan and others was on the 29th of that month. And this release was, very evidently, fraudulently given. The reasons given by Jordan for making it, at the time he did, and upon that particular property, are far from satisfactory, and lead irresistibly to the conclusion drawn probably by the court below, that it was to deprive the bank of its security. Under the evidence, we think the court was justified in finding that the first mortgage covered property of sufficient value, independently of that included in the second mortgage, to have fully satisfied the amount secured. This being so, it would have been inequitable to permit a satisfaction of the former, after such release, out of the property covered by the latter.

In *Guion v. Knapp*, 6 Paige, 35, it was held that where a mortgagee, with notice of successive alienations of parts of the mortgaged property, released that part which was primarily liable, in equity, for the payment of the mortgage debt, he should not be permitted to charge other portions with the payment of the mortgage, without deducting from the amount due the value of the part thus released.

After a careful perusal of the evidence, and an examination of authorities cited, we are of opinion that the judgment of the court on the issue joined was right, and it is affirmed.

JUDGMENT AFFIRMED.